# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

LUCIA LOYA, individually, and as the natural Mother of and Personal Representative of MARIBEL MIRAMONTES LOYA, deceased, and as the Permanent Guardian and next friend of MARIA GUADALUPE LOYA,

        Plaintiff,

v.          No. CIV 00-1773 BB/DJS

PRESBYTERIAN HEALTH CARE SERVICES, INC. d/b/a Presbyterian Hospital and Presbyterian Pickard Convalescent Center, and THE UNIVERSITY OF NEW MEXICO BOARD OF REGENTS, d/b/a The University of New Mexico Health Sciences, and DANA DAVIS, COREY FORD, CAMERON LUO, CHRISTY BEATO, SUSAN OLIVER, JOAN NEWMAN, KATHY KUNKEL, and JOHN WILLS, each in his or her individual capacity, and DAVID A. ARCHULETA, JASON BOUSLIMAN, JACK L. FORNER, JUDITH HERRERA, MARY TANG, RICHARD TOLIVER, and LARRY WILLARD, each in his or her official capacity,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of the University Defendants' motion to dismiss on qualified immunity grounds (Doc.17). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Defendants' motion will be denied.

This case was originally filed in state court. The University Defendants (all Defendants except Presbyterian Health Care; hereinafter "UNM") moved in state court for dismissal of the action. Following a hearing, Plaintiff was allowed an opportunity to amend her complaint. She did so in

December, 2000, and added several UNM Defendants in their individual capacity. Subsequently, this case was removed to federal court, and UNM has again moved to dismiss, claiming the individual UNM Defendants are entitled to qualified immunity.

**Standard for Qualified-Immunity Motion to Dismiss**: Since UNM's qualified-immunity defense has been raised in the context of a Rule 12(b)(6) motion to dismiss, this Court's review is limited to the pleadings, construing Plaintiff's allegations in her amended complaint and any reasonable inferences drawn therefrom in her favor. *See Dill v. City of Edmond*, 155 F.3d 1193, 1203 (10th Cir.1998). A heightened pleading standard applies, requiring the complaint to contain specific, non-conclusory allegations of fact sufficient to allow this Court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law. *Id.* at 1204.

**Essential Facts:** According to the complaint, Plaintiff and her daughter, Maribel Loya, were citizens of Mexico who had recently arrived in this country at the time of the incidents leading to this lawsuit. Maribel, who was sixteen years old, was pregnant. Maribel had a shunt in her head, as a result of an injury incurred in Mexico when she was eleven. She began to suffer difficulties with the pregnancy, or the shunt, or both, and sought medical treatment; obtaining such treatment may have been the motivation for Plaintiff and Maribel to come to the United States. Plaintiff took Maribel to Presbyterian Hospital, which could find nothing wrong and referred Maribel for psychiatric treatment. Maribel was then taken to the hospital at the University of New Mexico, which admitted her as a patient. However, UNM failed to have adequate numbers of Spanish-speaking staff available to translate for Plaintiff and Maribel, neither of whom spoke English. Plaintiff was forced to rely on her ex-husband's girlfriend as an interpreter. The girlfriend had no medical training or training as an interpreter. UNM also failed to contact Maribel's medical providers in Mexico. As a result, UNM

2

failed to obtain a complete medical history for Maribel, and failed to timely diagnose her medical condition.

During her stay at UNM, Maribel went into a coma. UNM decided to perform a Caesarian Section to deliver Maribel's baby. The baby, Guadalupe Loya, was born on November 16, 1999. Also during her stay at UNM, Maribel underwent a series of surgeries to replace and revise her shunt. These surgeries were allegedly performed in a negligent manner. Maribel's condition began to decline, and she was transferred to intensive care. On November 22, 1999, despite the deterioration in Maribel's condition, UNM decided to force Maribel and her family to return to Mexico, to a Mexican hospital. At the time of the attempted transfer, Maribel was still in a coma and suffering from various severe physical problems. UNM did not obtain consent from Plaintiff, or Maribel, or any relative of Maribel prior to the decision to transfer Maribel and Guadalupe to a hospital in Mexico. Maribel and Guadalupe were placed on an airplane, and Plaintiff was given the choice of staying in Albuquerque without her daughter and granddaughter, or of also boarding the plane. She chose to board the plane.

While the plane was airborne and headed toward Mexico, the Mexican consulate intervened and told the Mexican authorities not to allow the plane to enter Mexican airspace. This was because an American citizen (Guadalupe) was allegedly being taken across the border without the consent of any responsible guardian. The plane landed in El Paso, then returned to Albuquerque. UNM refused to admit either Maribel or Guadalupe as a patient, so they were taken to Presbyterian. On January 2, 2000, a month and a half later, Maribel died. This lawsuit ensued.

**Plaintiff's Legal Claims:** Plaintiff maintains that UNM violated her constitutional rights, or the constitutional rights of her daughter and granddaughter, in several ways. First, she claims she was denied her fundamental rights as a parent when Maribel and Guadalupe were transferred to the plane

3

bound for Mexico, against Plaintiff's express wishes.  These same actions, according to Plaintiff, violated her rights of association and due process (both substantive and procedural).  Furthermore, UNM's actions allegedly constituted an unreasonable seizure of Guadalupe and Maribel, in violation of the Fourth Amendment.  Finally, Plaintiff claims UNM discriminated against her and her family on the basis of race and national origin, by refusing to provide trained interpreters and by deciding to transfer Maribel and Guadalupe to a Mexican hospital against Plaintiff's wishes.

In addition to the constitutional claims, Plaintiff maintains UNM violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*  Plaintiff requests injunctive relief to compel the Regents of UNM, named as some of the individual UNM Defendants in this suit, to cease discriminating against patients on the basis of the patients' nationality or inability to speak English. Finally, Plaintiff brings a medical malpractice claim against UNM, alleging that the treatment provided to Maribel was negligent and caused harm to Maribel and Guadalupe.

UNM has moved to dismiss all the claims brought by Plaintiff against UNM.  Although the motion is framed as a motion to dismiss on the basis of qualified immunity, UNM also asks that the state-law claim for medical negligence be dismissed, although that is not a claim as to which qualified immunity applies.  *See D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir.1995) (qualified immunity defense does not apply to suits governed by state law).  In addition, UNM seeks dismissal of the Title VI claim for injunctive relief, which is also not subject to qualified-immunity analysis.  *See Kikumura v. Hurley*, 242 F.3d 950, 962 (10th Cir. 2001) (qualified-immunity doctrine is inapplicable to claims for equitable relief, as opposed to claims for damages).

**Law of the Case:**  The first question to address is the impact of the state court's decisions concerning Plaintiff's claims.  As Plaintiff points out, the state court made various rulings concerning the viability of those claims, in the context of motions to dismiss filed by the defendants or Plaintiff's

4

motion to amend her complaint. UNM is now attempting, in essence, to obtain reversal of the state court's rulings. Although Plaintiff did not specifically invoke the doctrine of law of the case, it is an issue the Court must consider in the interests of comity and deference to prior actions taken by a court of competent jurisdiction. When a case is removed from state court to federal court, the doctrine of law of the case is applicable to rulings made by the state court prior to removal. However, the federal court is not bound by the state court's rulings as to questions of federal law, since the doctrine is discretionary rather than mandatory. *See Waag v. Thomas Pontiac, Buick, GMC, Inc.*, 930 F.Supp. 393, 406-07 (D.Minn. 1996). Furthermore, for the same reason, the federal court is not bound even by a decision concerning state law, if the state court's decision is wrong as a matter of law. Therefore, the Court concludes the doctrine of law of the case does not prevent reexamination of the rulings made by the state court prior to removal.

**Federal Constitutional Claims – Qualified Immunity:** The qualified-immunity issue as to the constitutional claims requires a two-step analysis, addressing whether the alleged acts constitute a constitutional violation, and if so, whether the law was clearly established to that effect at the time of the alleged acts. *See Taylor v. Meacham*, 82 F.3d 1556, 1559 (10th Cir. 1996) (To determine whether a law enforcement officer is entitled to qualified immunity, a court must first determine whether the plaintiff has asserted the violation of a constitutional right at all, and then must decide whether that right was clearly established at the time of the incident). In order for the law on an issue to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as the plaintiff maintains. *Foote v. Spiegel,* 118 F.3d 1416, 1424 (10th Cir.1997). However, it is not necessary that Plaintiff "present an identical case to show the law was clearly established;" instead, Plaintiff must show only that the contours of the right were sufficiently clear that a reasonable official would understand he was

violating that right. *See Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1241 (10th Cir. 1999).

The Court will address each of the claimed constitutional violations in turn, analyzing the qualified-immunity question as to each. The first alleged violation is the deprivation of Plaintiff's liberty interest in parenting her child, which also implicates Plaintiff's right to associate with her child. This claim is based on UNM's acts of placing Maribel and Guadalupe on a plane, bound for Mexico, over Plaintiff's objections. Plaintiff maintains her rights to both substantive and procedural due process were violated by these actions. She also argues that the same rights were violated as to Maribel and Guadalupe.

In response, UNM makes two major arguments. First, UNM characterizes Plaintiff's claims as arguing in favor of a constitutional right to medical treatment, and points out there is no such constitutional right. As Plaintiff points out, this is a red herring. Plaintiff is not claiming that Maribel or Guadalupe had a constitutional right to remain at UNM Hospital and be treated there. Plaintiff is, however, claiming that as Maribel's parent, she had a right to veto the proposed transfer of Maribel and Guadalupe across national borders, to a hospital in Mexico. While UNM may have had a choice to (a) discharge Maribel and Guadalupe to Plaintiff's care, (b) continue to treat them, or (c) obtain a court order directing some other resolution of the problem, Plaintiff argues UNM did not have the option to act unilaterally by sending Plaintiff's child and grandchild to Mexico over Plaintiff's objections.

UNM next appears to argue that there is no clearly established law giving Plaintiff the right to withhold her consent for the proposed transfer of Maribel and Guadalupe across the border. This argument flies in the face of a multitude of cases holding that a parent has a fundamental liberty interest in the care, custody, and management of her child, and that seizure of a child by government

6

employees represents a serious infringement on that liberty interest. *See Malik v. Arapahoe County Dep't of Social Servs.*, 191 F.3d 1306, 1315 (10th Cir. 1999) (the law is clearly established that a parent has a liberty interest in familial association and privacy that cannot be violated without adequate pre-deprivation procedures, except in extraordinary circumstances); *J.B. v. Washington County*, 127 F.3d 919, 925-27 (10th Cir. 1997) (it is undisputed that a mother's liberty interest in the custody, care, and management of her children are of paramount importance; forced separation of a parent from a child, even for a short time, represents a serious impingement on both the parent's and the child's rights); *Hollingsworth v. Hill*, 110 F.3d 733, 738-40 (10th Cir. 1997) (parents have a fundamental liberty interest in the care, custody, and management of their children; 14th Amendment protects that liberty interest; removal of children from parent's custody requires pre-deprivation notice and hearing except in extraordinary situations; right to such notice and opportunity to be heard was clearly established in January 1993).

It is difficult for the Court to examine a more drastic interference with a parent's right to care for, have custody over, and manage her child than to attempt to transport that child across international borders without the parent's consent, or indeed the parent's presence. UNM argues that there has been no case decided in the specific context applicable to this case, of hospital personnel making a treatment decision to send a patient to another country and acting against the parent's wishes. As the Tenth Circuit pointed out in *Sutton*, however, it is not necessary that a case have been decided exactly on point, in order for the law to be clearly established. Plaintiff's liberty interest in her right to control over, and custody of, her child, and to associate with her family, was clearly established at the time the UNM Defendants acted. Also, the right not to have government employees or officials physically interfere with that control and custody, by seizing or transporting Maribel and Guadalupe without Plaintiff's consent, was also clearly established. In sum, any

7

reasonable hospital official or employee should have known that prior notice and opportunity to be heard had to be provided to Plaintiff before Maribel and Guadalupe could be shipped across an international border, against Plaintiff's wishes.[1] Qualified immunity will therefore not be granted on Plaintiff's substantive or procedural due-process claims.

A similar result obtains with respect to the rights of Maribel and Guadalupe. They were not deprived of the same constitutional rights as Plaintiff, since neither one's parental rights are involved.[2] However, at the time of UNM's actions, the law was clearly established that the forcible seizure of a child, and transportation of that child without the child's consent, constitutes a "seizure" of the child under the Fourth Amendment. *See Malik*, 191 F.3d at 1316; *J.B.*, 127 F.3d at 928. It is probably true, as UNM argues, that Plaintiff's own Fourth Amendment rights were not violated by this seizure. *See J.B.* (mother may not assert vicarious 4th Amendment claim based on seizure of child, although it is conceivable that mother's Fourth Amendment rights could be violated by such seizure, under certain circumstances); *see also Kia P. v. McIntyre*, 235 F.3d 749, 762 (2d Cir. 2000) (where baby was retained in hospital for ten days, against mother's will, due to suspicions of drug abuse, baby had standing to bring 4th Amendment seizure claim but mother did not). However, Maribel and Guadalupe had Fourth Amendment rights that are being asserted in this lawsuit. Furthermore, Maribel and Guadalupe both had a right to due process prior to being forcibly confined or transported by UNM, let alone removed from this country. *See J.B.*, 127 F.3d at 925, 927 (child enjoys a liberty

---

[1] Of course, it is possible UNM was justified in its actions, and will ultimately be able to provide persuasive evidence that no unconstitutional deprivation of Plaintiff's rights occurred. At this point, however, taking the allegations of Plaintiff's complaint as true, the Court cannot grant qualified immunity on this claim as a matter of law.

[2] Although Maribel was Guadalupe's mother, it does not appear she was not deprived of custody or control over Guadalupe because Guadalupe remained with her during these events, and Maribel was in no condition to be express any disagreement with UNM's actions as to Guadalupe.

interest requiring that procedural due process accompany her forced confinement at shelter; that liberty interest also implicates right of familial association protected by substantive due process aspect of Fourteenth Amendment).

As UNM did with respect to Plaintiff's own constitutional claims, UNM argues there is no directly applicable case involving hospital personnel attempting to transport a patient out of the country. Again, this makes no difference in the qualified-immunity analysis. The contours of Maribel's and Guadalupe's rights were clearly established prior to UNM's actions, despite the lack of a case directly on point. UNM is free to argue there were medical or other reasons for the attempted transfer, which overrode Maribel and Guadalupe's due-process rights and rendered the seizure a reasonable one under the Fourth Amendment. *Cf., e.g., J.B.*, 127 F.3d at 930-31 (although government's act of taking child from home to domestic-abuse shelter was a "seizure" under the Fourth Amendment, it was a reasonable seizure and therefore not actionable, because it was supported by probable cause to believe the child had been abused). At this point, however, taking the allegations of the amended complaint as true, qualified immunity is not appropriate as to Maribel and Guadalupe's Fourth and Fourteenth Amendment claims.

Another constitutional claim raised by Plaintiff is an equal-protection claim, based on allegations that UNM's failure to obtain a proper medical history or to provide competent interpreters was caused by deliberate discrimination on the basis of national origin. UNM characterizes this as a simple claim of substandard medical treatment, which cannot be the ground for a discrimination claim. However, Plaintiff has alleged that UNM deliberately discriminated against her and her daughter, due to their inability to speak English and their national origin. If this allegation is true, a reasonable hospital employee would have known it was a violation of equal protection to engage in

9

such discrimination. Plaintiff's and Maribel's constitutional right to equal protection was clearly established, and Plaintiff is entitled to proceed with discovery to attempt to prove this claim.[3]

**Title VI Claim for Injunctive Relief:** Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.,* provides that no person shall, on the ground of race, color, or national origin, be excluded from participation in, or denied the benefits of, or be subjected to discrimination under any program or activity receiving federal funding. Plaintiff maintains that UNM receives Medicaid funding, and is therefore subject to Title VI. Plaintiff requests injunctive relief against the UNM Regents by naming each Regent individually, but in their official capacity, asking that they be ordered not to allow the hospital to discriminate on the basis of race or national origin. UNM requests dismissal of this claim. UNM raises several contentions in support of dismissal, albeit with a minimal level of argument or discussion. The Court will address each in turn, equally briefly.

UNM argues the Regents, sued in their official capacities, are not "persons" subject to liability under § 1983. This is true, but Plaintiff is not attempting to hold the Regents "liable" for damages. Plaintiff requests only injunctive relief. State officials may be named in their official capacity, and are amenable to suit under § 1983, where the relief sought against those officials is purely equitable. *See Berry v. Scafe*, 2001 WL 909210 (10th Cir.); *Konijnendijk v. Deyoe*, 727 F.Supp. 1392, 1396 (D.Kan. 1989) (individual members of Board of Regents could be sued in their official capacities for purposes of obtaining injunctive relief). This is true even if the officials are not accused of personal participation in the events upon which the request for injunctive relief is based. *See Berry*. This argument is without merit.

---

[3]At this point, this claim appears to be Plaintiff's weakest, because there are so many possible explanations for UNM's actions, including lack of resources or simple negligence. However, these explanations are defenses applicable at the summary-judgment stage or at trial, not reasons to dismiss the case at this early point in the litigation.

UNM also argues that Title VI requires an intent to discriminate, and that Plaintiff has alleged only negligence on the part of UNM. Again, it is true that intentional discrimination is required as a basis for a Title VI claim. However, Plaintiff has alleged such discrimination. Plaintiff's amended complaint alleges that UNM deliberately discriminated against Plaintiff, Maribel, and Guadalupe, on the basis of the race and national origin of Plaintiff and her family. Furthermore, as Plaintiff points out, some of the specific allegations in the amended complaint, concerning UNM's practice of requiring family members to interpret rather than providing trained interpreters, have been cited by the Department of Health and Human Services as examples of possible violations of Title VI. 65 Fed. Reg. 52762 (2000). The Court will find that Plaintiff has adequately stated a *prima facie* claim of intentional discrimination on the part of UNM.

UNM's next argument is a suggestion that Title VI does not apply to Medicaid funding recipients. UNM cited no authority for this suggestion, and the authority the Court has located is to the contrary. In *United States v. Baylor Univ. Med. Center*, 736 F.2d 1039, 1042-45 (5th Cir. 1984), the Fifth Circuit determined that Medicaid and Medicare payments constitute "federal financial assistance" for purposes of Title VI as well as the Rehabilitation Act, 29 U.S.C.A. § 794. Accordingly, hospitals treating Medicaid and Medicare patients are bound by the non-discrimination provisions of Title VI. Every other federal court that has considered the issue, except one, appears to have arrived at the same result. *See, e.g., Grimes v. Superior Home Health Care of Middle Tenn.*, 929 F.Supp. 1088 (M.D.Tenn. 1996) (applying Title VI to health facility receiving payments from Medicare); *Bhatt v. Uniontown Hosp.*, 1986 WL 30681 (W.D.Penn.) (following *Baylor*); James Lockhart, Annotation, *What Constitutes Federal Financial Assistance for Purposes of § 504 of Rehabilitation Act (29 U.S.C.A. § 794), Which Prohibits Any Program or Activity Receiving Federal Financial Assistance From Discriminating on Basis of Disability*, 147 A.L.R. Fed. 205 (1998)

11

(listing cases concerning Rehabilitation Act, which contains same language as Title VI and is expressly modeled after Title VI). The Court will therefore reject this argument.

UNM also argues that neither Plaintiff, nor her daughter, nor her granddaughter have standing to pursue the Title VI claim, for two reasons: first, none of them were excluded from receiving Medicaid benefits; and second, they must show they are an intended beneficiary of the Medicaid program in order to have standing. These arguments are specious. Plaintiff has alleged that the medical care provided by UNM was rendered in a discriminatory manner, because UNM intentionally failed to provide interpreters or to obtain a sufficient medical history, and forced Plaintiff to rely on an untrained family member as an interpreter. Thus, even though Plaintiff's family did receive treatment funded by Medicaid, she has standing to pursue the Title VI discrimination claim to prevent future allegedly discriminatory acts by UNM. In addition, Guadalupe, a United States citizen who appears to be indigent, has sufficiently alleged that she is an intended beneficiary of Medicaid funding. UNM's standing arguments are without merit and are rejected. The Title VI claim for an injunction will be allowed to proceed.

**Medical Negligence Claim:** UNM maintains that Plaintiff has failed to adequately allege a medical negligence claim, and that there is no waiver of immunity in the New Mexico Tort Claims Act for Plaintiff's claims. The Court is at a loss to understand how UNM can raise these arguments in good faith. Plaintiff's amended complaint expressly states, in several places, that UNM negligently failed to diagnose or treat Maribel's medical condition. The complaint also alleges that UNM's failure to provide proper translation led to misdiagnosis or untimely diagnosis of Maribel's illness. Furthermore, as to the waiver of immunity, NMSA Section 41-4-9 waives immunity for wrongful death caused by the negligence of public employees in the operation of a hospital. Given this clear statement of waiver, directly applicable to the alleged facts contained in the amended complaint,

UNM's contention, that no possible waiver of immunity applies to those alleged facts, is untenable.[4] Arguments without an appropriate legal foundation waste valuable judicial resources and may be sanctioned.  F.R.C.P. 11; *Bolivar v. Pocklington*, 975 F.2d 28 (1st Cir. 1992).

**Punitive Damages:**  Plaintiff has clarified that she is seeking punitive damages only for the civil rights violations alleged in the amended complaint.  UNM's arguments against punitive damages are premised on two assumptions:  (1) that the individual defendants are entitled to qualified immunity on the civil rights claims; and (2) that punitive damages cannot be awarded for the medical negligence claim.  The first assumption has been rejected by this Court, in this opinion.  The second is true, but Plaintiff's clarification eliminates the issue of punitive damages from the negligence claim.  This argument, also, will be rejected.

**Conclusion**

Based on the foregoing, UNM's motion for summary judgment will be denied on all grounds.

---

[4] In both briefs, UNM points out that the amended complaint does not identify a Tort Claims Act provision waiving immunity.  It is not necessary that a complaint do so; sovereign immunity is a defense available to a government defendant, and the lack of such immunity is not an element of a claim that must be pled to survive a motion to dismiss.  *See, e.g., Hern v. Crist*, 735 P.2d 1151, 1154 (N.M.App. 1987) (discussing defense of sovereign immunity, and fact that it can be raised at any time).

**ORDER**

A Memorandum Opinion having been entered this date, it is hereby ORDERED that the UNM Defendants' motion for summary judgment (Doc. 17) be, and hereby is, DENIED.

Dated this 17th day of September, 2001.

BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiffs**:
Nancy L. Simmons
Law Offices of Nancy L. Simmons, P.C.
122 Tulane S.E.
Albuquerque, New Mexico 87106

**For Defendants**:
W. Ann Maggiore
Butkus, Gay & Jahner, P.C.
P.O. Box 20
Albuquerque, New Mexico 87103